William C. COLEMAN, Plaintiff,

v.

AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Defendant/Third Party Plaintiff,

v.

The CITY OF GREENVILLE, Third Party Defendant.

Civil Action No. 4:95cv73–D–B.

United States District Court, N.D. Mississippi, Greenville Division.

June 11, 1996.

Gaines S. Dyer, James Rabun Jones, Jr., Greenville, Mississippi, for Plaintiff.

Thomas Y. Page, Walter Christian Morrison, IV, Jackson, Mississippi, for American Manufacturers Mutual Insurance Company.

Guy Ken Ellis, Jr., Greenville, Mississippi, for The City of Greenville, Mississippi.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Again this court takes up the matter of a vehicular accident involving the plaintiff and a municipal fire truck owned and operated by the third-party defendant, City of Greenville, Mississippi ("Greenville"). Presently pending before the court is the second motion for summary judgment filed by the defendant American Manufacturers Mutual Insurance Company ("American"), and motions for summary judgment and to consider a motion for summary judgment out of time filed by the City of Greenville.

### Factual Background

This court has already summarized the facts of this case as follows:

> On October 3, 1993, an employee of the Greenville Fire Department, Homer L. Smith, drove the fire truck through a red light at the intersection of Alexander Street and Colorado Street in Greenville, striking the plaintiff's vehicle. At the time the fire truck entered the intersection, it was travelling approximately five (5) miles per hour above the posted limit of thirty-five (35) miles per hour, and had its emergency lights and sirens in operation. The plaintiff made a demand for compensation against the City of Greenville for his injuries, which was denied based upon an assertion of the city's immunity under the Mississippi Sovereign Immunity Act. Miss.Code Ann. § 11–46–9(c). The plaintiff then turned to his own auto insurance carrier and filed a claim under his uninsured motorist (UM) coverage, taking the position that the City of Greenville's fire truck was an "uninsured vehicle" as defined under Mississippi's Uninsured Motorist Act. That claim was also denied, and this litigation resulted.

*Coleman v. American Manuf. Mut. Ins. Co.,* 930 F.Supp. 252 (N.D.Miss.1995) (Davidson, J.) (Memorandum Opinion and Order Holding Motion for Summary Judgment in Abeyance). The plaintiff originally filed suit against the defendant American for payment under the UM coverage provisions of his automotive insurance policy. American then filed a third-party complaint against the City of Greenville, seeking indemnification against the plaintiff's claims.

After consideration, this court granted in part and denied in part American's first motion for summary judgment. The undersigned determined that while American was indeed entitled to assert the defense of sovereign immunity on behalf of the alleged "uninsured motorist," the City of Greenville, against the plaintiff's claims arising out of

negligence, such immunity would not protect American from claims of injury resulting from certain reckless activity. Miss.Code Ann. § 11–46–9(1)(c) (Supp.1995). The court also permitted the plaintiff to amend his complaint to charge the driver of the Greenville fire truck, Mr. Homer Smith, with recklessness.

American then filed its second motion for summary judgment with the court, charging that the Greenville fire truck is not an "uninsured vehicle" so as to trigger coverage under the plaintiff's automobile insurance policy. The City of Greenville also filed a motion for summary judgment, and asserted that American's third-party complaint against it was untimely as outside of the statute of limitations under the Mississippi Tort Claims Act. Miss.Code Ann. § 11–46–11(3). As its motion was filed beyond the set deadline for filing dispositive motions in this cause, Greenville filed a motion for this court to consider its untimely motion for summary judgment. The plaintiff has responded to these various motions, and they are ripe for decision.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj,* 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994).

## II. WAS THE FIRE TRUCK AN "UNINSURED VEHICLE?"

■ The court acknowledged this problem when analyzing American's first motion for summary judgment:

Initially, in order to recover under his insurance policy's uninsured motorist provisions, the plaintiff must establish that the fire truck was an "uninsured vehicle" as defined under Mississippi law. Miss.Code Ann. § 83–11–103(c). The most common qualification is that an "uninsured motor vehicle" is "[a] motor vehicle as to which there is no bodily injury liability insurance." Miss.Code Ann. § 83–11–103(c)(i). The plaintiff has alluded to the fact that the City of Greenville does not possess traditional insurance coverage, but rather is self-insured through the Mississippi Municipal Liability Plan (MMLP), and such self-insurance is authorized by state statute. Miss.Code Ann. § 11–46–17(5) (Supp. 1995). The MMLP is a form of self-insurance and does not constitute "insurance" sufficient to create a waiver of sovereign immunity. *Morgan v. City of Ruleville,* 627 So.2d 275, 281 (Miss.1993); *McGee v. Parker,* 772 F.Supp. 308, 310–12 (S.D.Miss. 1991); *White v. City of Morton,* 775 F.Supp. 962, 967–69 (S.D.Miss.1990), *rev'd on other grounds,* 959 F.2d 539 (5th Cir. 1992); *C–1, a Minor v. City of Horn Lake,* 775 F.Supp. 940, 951–52 (N.D.Miss.1990). One of the plaintiff's contentions in this cause is that the MMLP likewise does not constitute "insurance" for purposes of the Mississippi Uninsured Motorist Act. In any event, the defendant feels this is a non-issue, and instead relies upon its other arguments. As it is the burden of the defendant to establish that it is entitled to summary judgment, and as it has not at-

tempted to do so on this issue, the court shall not dwell upon this matter further.

*Coleman v. American Manuf. Mut. Ins. Co.,* 930 F.Supp. 252 (N.D.Miss.1995) (Davidson, J.) (Memorandum Opinion and Order Holding Motion for Summary Judgment in Abeyance). In their second motion for summary judgment, American does indeed feel this matter is of some import. This court agrees, and fully believes that the issue has serious implications which will impact a vast amount of litigation in Mississippi courts. As this cause is fraught with matters which have never been conclusively decided under Mississippi law, this court will make its best *Erie*-guess [1] as to how the Mississippi Supreme Court would decide these issues if faced with them.

Mississippi statutory law dictates the qualifications for a vehicle to be considered "uninsured" for purposes of the Uninsured Motorists Act. Miss.Code Ann. § 83–11–103(c). Two of the available categories of "uninsured" vehicles are at issue in the case at bar.

### A. DID THE FIRE TRUCK HAVE "BODILY INJURY LIABILITY INSURANCE?"

The first category of "uninsured" vehicles in dispute here are those vehicles "as to which there is no bodily injury liability insurance." Miss.Code Ann. § 83–11–103(c)(i). As already noted, the Greenville fire truck involved in this accident was not covered by a traditional automobile liability policy, but rather was protected under the MMLP. The court has also already noted that the Mississippi Supreme Court has determined that the MMLP is not "insurance" for purposes of the waiver of sovereign immunity. *Morgan,* 627 So.2d at 281.

American urges this court to find that the MMLP is indeed insurance, at least as far as Mississippi's UM statute is concerned. In support of this claim, American basically argues that MMLP protection is the equivalent of liability insurance and therefore should be treated as such. "Insurance" is defined under Mississippi law as:

an agreement by which one party for a consideration promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction, loss, or injury of something in which the assured or other party has an interest, as to indemnity therefor.

Miss.Code Ann. § 83–5–5. The *Morgan* court essentially found that the MMLP did not meet this definition, but rather that "the MMLP is a non-profit organization created to share the liability of municipalities." Also relevant to the determination of the Mississippi Supreme Court was the fact that the by-laws of the MMLP state it is "**not intended to operate as an insurance company**, but rather [is intended to provide] mechanisms by which each municipality provides reserves for itself and its employees in their official capacities for **uninsured** liability claims **not covered by immunity or a policy of insurance.**" *Morgan,* 627 So.2d at 281 (emphasis added). This court can see no reason why the *Morgan* reasoning should not also apply to "insurance" for purposes of UM coverage. In its zeal to convince the court otherwise, American details how the MMLP is virtually identical to a plan of insurance:

Close examination of the Plan leaves little doubt that it is the equivalent of common liability insurance. The Plan form resembles a common insurance policy in that it contains a declarations sheet and a comprehensive liability coverage document. Secondly, the language of the Plan form resembles a common insurance policy in that it promises to pay on behalf of its insured all sums which the insured shall become legally obligated to pay as damages arising out of an occupance. Most importantly, the substance and effect of the Plan is to provide liability protection to the City and to compensate claimants such as Coleman.

Defendant's Brief, p. 5. American's argument sounds remarkably similar to that of Justice McRae of the Mississippi Supreme Court, in his partial dissent to the *Morgan* decision. *Morgan,* 627 So.2d at 283 ("[T]he

---

**1.** *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

MMLP operates identically to an insurance company, establishing reserves and spreading risk.... If it waddles like a duck and quacks like a duck, it is a duck. MMLP waddles and quacks like an insurance company, therefore it is one."). The majority of Mississippi's highest court did not agree with Justice McRae on this point, and found the MMLP to be a different animal. The MMLP does not meet the definition of "insurance" under Mississippi law in this case, and the reasoning underlying the *Morgan* decision is applicable regardless of whether the ultimate determination revolves around sovereign immunity or uninsured motorist coverage. As such, the municipal fire truck owned and operated by the City of Greenville in this case is not prevented from classification as an "uninsured" motor vehicle by the terms of Miss.Code Ann. § 83–11–103(c)(i). The court cannot say that American is entitled to the entry of a judgment as a matter of law in this matter.

B. IS THE MMLP A "BOND OR DEPOSIT OF CASH OR SECURITIES" SUFFICIENT TO PREVENT THE FIRE TRUCK FROM BEING "UNINSURED?"

 The other category of "uninsured" vehicles which is argued by American in this case is:

A motor vehicle as to which there is no bond or deposit of cash or securities in lieu of such bodily injury and property damage liability insurance **or other compliance with the state financial responsibility law** ...

Miss.Code Ann. § 83–11–103(c)(iv) (emphasis added). American takes the position that Greenville's interest in the MMLP constitutes such a "bond or deposit of cash or securities" in lieu of insurance. This court is aware of no reported decision explaining what would be sufficient to meet this requirement. However, a complete reading of this provision of the statute reveals that the "bond or deposit of cash or securities" referred to is one that is sufficient to satisfy the state financial responsibility law and its obligations of demonstrating financial responsibility following a motor vehicle accident. Classification of vehicles whose own-

ers fail to comply with financial responsibility laws as "uninsured" for purposes of UM statutes is a common feature of state uninsured motorist laws, if not a universal one. *E.g.,* *Farmers Ins. Exchange v. Walther,* 902 P.2d 930, 934 (Col.Ct.App.1995); *Indiana Ins. Co. v. Allis,* 628 N.E.2d 1251, 1253 (Ind.Ct.App. 1994). Indeed, the language of the Mississippi statute itself states that "**other** compliance" with the financial security law is sufficient to prevent classification as "uninsured." If the provision did not contain the word "other" and simply read "A motor vehicle as to which there is no bond or deposit of cash ... **or compliance** with the state financial responsibility law ...," then American's argument would have substantially more credence with the court. As the statute actually reads, the word "other" connotes to the undersigned that the "bond or deposit of cash" referred to must be more than a reserve of funds set aside such as a bank account or monies placed with the MMLP, but rather must be one that actually complies with the requirements of Mississippi's financial responsibility law. The net meaning of § 83–11–103(c)(iv) is that compliance with the state financial responsibility law—be that by bond, deposit of cash, deposit of securities or otherwise—prevents a vehicle from classification as "uninsured," notwithstanding the absence of actual insurance protection covering that vehicle.

Mississippi's financial responsibility law provides that whenever proof of financial responsibility is required under its provisions, a party may provide such proof in alternate ways—including bond or a deposit of money or securities. Miss.Code Ann. § 63–15–37. Specific statutory requirements detail what is sufficient to provide these avenues of proof. *E.g.,* Miss.Code Ann. §§ 63–15–49 (bond); 63–15–51 (money or securities); 63–15–39 (certificate of insurance); 63–15–53 (self-insurance). In order to establish that the fire truck in question is not "uninsured" by virtue of the provisions of § 83–11–103(c)(iv), compliance with the state financial responsibility law would have to be shown. Ergo, the applicable statutory requirements for a "bond," a "deposit of cash or securities" or "other compliance" would also have to be

shown. There is no evidence before the court that the City of Greenville complied with the provisions of § 63–15–1, et seq. and its subsequent obligations to provide proof of financial responsibility, and this court does not expect that the City of Greenville has done so. The City of Greenville is, after all, excluded from the application of the chapter.[2] Miss.Code Ann. § 63–15–5 ("This chapter shall not apply to ... any political subdivision of this state."). Reducing this analysis to its lowest common denominator, the court finds that because the City of Greenville is not required to comply with the provisions of the state financial responsibility law, § 83–11–103(c)(iv) is simply inapplicable to the facts at bar and cannot serve as a basis for preventing classification of municipal vehicles as "uninsured" under Mississippi's Uninsured Motorist Statute. Were there proof that the City of Greenville has complied with Mississippi's financial responsibility law, this court's analysis would be different. However, there is no such proof before the court, and the undersigned is aware of no practical reason why the city should have done so and does not expect that the city will do so in the future. American's second motion for summary judgment shall be denied.

## III. THE MOTION OF THE COUNTER-DEFENDANT CITY OF GREENVILLE FOR SUMMARY JUDGMENT AGAINST THE DEFENDANT AMERICAN

Also before the court are the motions of the third-party defendant City of Greenville for the entry of summary judgment on its behalf, and for the court to consider that motion even though it was filed outside of the time designated by the court for the filing of dispositive motions. The motion is straightforward, and addresses the single issue of whether American's third-party claim against Greenville was filed within the time period proscribed within the applicable statute of limitations. After review of American's third-party complaint, it is unclear to the court the exact nature of American's claim against Greenville. It appears that there is also some confusion among the parties as to the exact nature of the claims. Therefore, the undersigned will discuss the two types of potentially viable claims as if American were asserting them both, and address the merits of Greenville's motion as to both types of claims.

## A. AMERICAN'S RIGHT OF SUBROGATION

As an uninsured motorist carrier, American is endowed by statute with the right of subrogation to all claims of the plaintiff against the "uninsured" motorist City of Greenville to the extent of all payments made to an insured under the UM provisions of an insurance policy. Miss.Code Ann. § 83–11–107. This right is derivative of the insured's rights against the uninsured motorist, and therefore the carrier has no greater rights than those of the insured. *Twin States Ins. Co. v. Bush,* 183 So.2d 891, 893 (Miss.1966) ("[T]he insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses.") (quoting 29A Am. Jur Insurance, § 1720). Any third-party subrogation claim against Greenville by American, then, would be bound by the same statute of limitations, and in the same manner, as a claim by the

---

**2.** Nor does this court believe that the City of Greenville's failure to conform to the requirements of the financial responsibility law constitutes "compliance" in light of the fact that the city is not required to comply. "Compliance" to an obligation connotes an affirmative action on the part of a party, and not the failure to act when not required to do so. In any event, such an interpretation would wrongfully imply that the Mississippi legislature intended to prevent state, county and municipally owned vehicles from ever being classified as "uninsured." If such was the intent of the legislature, they certainly could have found a more direct manner of doing so. The court notes that the Mississippi Uninsured Motorist Act specifically excludes from the definition of "uninsured motor vehicles" those vehicles "owned by the United States government and against which a claim may be made under the Federal Tort Claims Act, as amended." Miss.Code Ann. § 83–11–103. The Mississippi legislature could have easily added language to this statute to likewise plainly exclude state, county or municipally-owned vehicles covered under the Mississippi Tort Claims Act from classification as "uninsured," but it did not. Had the legislature deemed it appropriate to add such language to the statute, this court's ruling would be quite different.

plaintiff against the third-party defendant City of Greenville would be. *Bailey v. State Farm Fire and Cas. Ins. Co.*, 621 F.Supp. 1016, 1017 (S.D.Miss.1985). Any subsequent destruction of American's derivative third-party claim against Greenville by the expiration of that statute of limitations would not, however, affect the plaintiff's claim against American. *Bailey*, 621 F.Supp. at 1018; *Rampy v. State Farm Mutual Automobile Ins. Co.*, 278 So.2d 428 (Miss.1973).

One basis for the court's decision in *Bailey* was that in order for a plaintiff to be "legally entitled to recover" under his insurance policy's uninsured motorist provisions, the plaintiff would have to have filed suit against his insurer within essentially the same limitations period that would apply to an insured's claim against the uninsured motorist. *Bailey*, 621 F.Supp. at 1017–18. In effect, this portion of *Bailey* held that an insured's status of being "legally entitled to recover" was to be determined as of the date the insured filed suit against his UM carrier. This determination in *Bailey* is certainly consistent with the previous directive of the Mississippi Supreme Court which this court has previously noted, that "it was not intended that the named insured be granted any greater rights against the uninsured motorist carrier than [he] would have enjoyed against the uninsured tortfeasor." *Aitken v. State Farm Mutual Auto. Ins. Co.*, 404 So.2d 1040 (Miss. 1981). American presents this same reasoning to the court today.

Subsequent to the *Bailey* decision, however, the Mississippi Supreme Court clarified the meaning of "legally entitled to recover," and determined that such status of the insured is to be determined **at the time of the accident**, and not as of the time suit is filed. *Medders v. United States Fidelity & Guar. Co.*, 623 So.2d 979, 989 (Miss.1993).

We hold that the phrase *legally entitled to recover* found in the Mississippi UM statute limits the scope to those instances in which the insured would be entitled **at the time of injury** to recover through legal action.

*Medders*, 623 So.2d at 989 (emphasis added). While not making obsolete all of the holdings in *Bailey*, the *Medders* decision does indeed alter the date from which the court is to determine whether a party is "legally entitled to recover" for purposes of the Mississippi Uninsured Motorist Act. As a consequence, it appears that the *Aitken* directive, while sufficient to empower UM carriers with the immunity defenses [3] of the uninsured motorist, does not allow the carrier to vicariously assert the uninsured motorist's statute of limitations defense to claim that the insured is not "legally entitled to recover." Instead, the manner in which UM carriers such as American are limited in asserting statutes of limitation is confined to arguing that the plaintiff's claim against them under the insurance policy is barred by Mississippi's general statute of limitations. *Lawler v. Government Employees Ins. Co.*, 569 So.2d 1151, 1153 (Miss.1990); *Vaughn v. State Farm Mut. Auto Ins. Co.*, 445 So.2d 224, 225 (Miss. 1984).

█ In any event, American's derivative subrogation claim against Greenville would be bound by a one year statute of limitations, in light of the fact that the claim is encompassed under the Mississippi Tort Claims Act. Miss.Code Ann. § 11–46–11(3). The accident in question occurred on October 3, 1993, and therefore Coleman's actionable claims against Greenville accrued on that date. Any subrogation claim by American against Greenville by virtue of the accident necessarily accrued on that date as well. American did not file its third-party claim [4] against Greenville until February 28, 1995.

3. *E.g., Medders*, 623 So.2d at 984 (immunity by virtue of worker's compensation exclusivity of recovery); *Aitken*, 404 So.2d at 1043 (interspousal tort immunity); *Perkins v. Insurance Co. of North America*, 799 F.2d 955, 959 (5th Cir.1986) (worker's compensation).

4. In addition, a carrier's right of subrogation under § 83–11–107 does not even arise, by the very terms of the statute, until a claim of the insured is actually paid. As such, any claim of subrogation asserted at this juncture by American is premature as its cause of action has yet to accrue. This problem also affects American's claim of equitable indemnification. However, as discussed *infra*, the court does not believe that this fact alone should require dismissal of the claim.

American does not present to this court any evidence that might justify tolling or other extension of the applicable one year period to place the filing of its third-party complaint within the limitations period. Insofar as the defendant American has stated a claim against the third-party defendant City of Greenville under its rights of subrogation pursuant to the Mississippi Uninsured Motorist Act, that claim is untimely and shall be dismissed. There are no genuine issues of material fact as to this matter, and the third-party defendant City of Greenville is entitled to the entry of judgment as a matter of law on this claim.

## B. EQUITABLE INDEMNIFICATION

■ In its response to Greenville's motion for summary judgment, American appears to not so much argue that it is entitled to pursue subrogation claims against the City of Greenville, but rather that it will possess "an equitable right to indemnity" against Greenville should Coleman prevail against it on his UM claim. Defendant's Brief in Response to Greenville's Motion for Summary Judgment, p. 3.

> A right to indemnity arises when one party is exposed to liability by the action of another, who, in equity or in law, should make good the other's loss. It is also equally clear that where one party has been required to discharge a claim for which he is only secondarily liable, he may compel indemnity from the person primarily liable for the obligation giving rise to the claim.

*Reid v. United States*, 558 F.Supp. 686, 688 (N.D.Miss.1983). When indemnification of this type is based upon equity, the doctrine is not surprisingly referred to as "equitable indemnification" by most courts. The Mississippi Supreme Court has never addressed the right of a UM carrier to "equitable indemnification" against an uninsured motorist. This is not surprising, in light of the fact that a UM carrier already has a statutory right of subrogation against the uninsured motorist,

and a UM carrier may already pursue recovery of any amounts paid to its insured. Further, there is usually no controversy to be considered, because uninsured motorists as a general rule, "tend to be financially irresponsible," and any subrogation or indemnification rights are generally of little, if any, value. *Bailey*, 621 F.Supp. at 1018; *Rampy*, 278 So.2d at 432. Such does not appear to be the case in this matter, for even if the MMLP does not serve as "insurance" within the meaning of the Uninsured Motorist Act, it certainly serves as an asset which can satisfy a judgment against the City of Greenville.

The question for this court then becomes— In light of the *Erie*-guesses that this court has heretofore made concerning Mississippi law in this case, and in consideration of established Mississippi law, would the Mississippi Supreme Court recognize on behalf of the defendant American a right to equitable indemnification, in addition to its statutory right of subrogation, against the City of Greenville in this case if the plaintiff recovers a judgment against American? Under the facts at bar, and because of the *Erie* rulings of this court already made, the undersigned is of the opinion that American would be entitled to assert a claim of equitable indemnification against Greenville and attempt to recoup any monies that are paid to the plaintiff.

Central to this court's decision in this cause is the fact that by the time that the plaintiff served process upon the defendant, American's statutory right to assert a subrogation claim against Greenville had already expired by virtue of the one-year statute of limitations. The Mississippi legislature intended for UM carriers to have a claim against uninsured motorists to recoup claims by their insureds. American was to a great extent deprived of its subrogation right when Mr. Coleman chose to pursue his claim at a time where American's claim against Greenville was already precluded.[5] Had Mr. Cole-

---

5. Mr. Coleman did initially file his claim for benefits with American within the limitations period—on or about May 5, 1994. Exhibit "D" to Plaintiff's Brief in Opposition to Defendant's Second Motion for Summary Judgment. If Ameri-

can had chosen to pay Coleman's claim at that time, it then would have had an opportunity to assert its statutory right of subrogation. As it happened, however, American denied the claim. As "equitable indemnification" is a creature of

man filed suit against American so that American would have had a better opportunity to assert its statutory subrogation rights, equity would not so favor American with a second chance for recoupment.

■ As American correctly notes in its submissions to this court, American's claim for equitable indemnification will accrue, if at all, upon the entry of judgment against American in favor of Mr. Coleman. *Tarver v. United States and Pan Am World Services*, 785 F.Supp. 607, 613 (S.D.Miss.1991) (stating statute of limitations for claim of indemnification begins to run when liability is fixed). As the action will not accrue until then, the appropriate statute of limitations will likewise not begin to run until that time. Whatever limitations period is applicable to this equitable indemnification claim, it has yet to run and Greenville is not entitled to the entry of judgment as a matter of law for that reason. However, the fact that the cause of action has yet to accrue presents this court with another problem.

■ As American's cause of action for indemnity has yet to accrue, there is no "case or controversy" for this court to decide. American has no cognizable claim against Greenville at this time and the only other potentially available action would be for subrogation, which this court has already found to be barred. As a result, Greenville should technically be dismissed from this action. *See e.g., Carr v. Home Insurance Co.*, 250 Va. 427, 463 S.E.2d 457 (1995). In this court's opinion, however, doing so at this juncture would be a blatant waste of judicial resources and would not facilitate the resolution of this controversy. Additional judicial time and energy would have to be expended at a later date in consideration of the same incident in the event that the plaintiff obtains a verdict against the defendant in this case. This court will not be the first in retaining, for reasons of judicial economy, a claim that is not yet ripe for consideration. *East Mississippi Electric Power Association v. Porce-*

*lain Products Co.*, 757 F.Supp. 748 (S.D.Miss.1990); *Koonce v. Quaker Safety Products & Manufacturing Co.*, 798 F.2d 700, 708–713 (5th Cir.1986); *George Cohen Agency, Inc. v. Donald S. Perlman Agency, Inc.*, 69 A.D.2d 725, 419 N.Y.S.2d 584 (2d Dept.1979). Greenville's motion for summary judgment shall be denied as to the remainder of American's third-party claims against it.

## CONCLUSION

Under the present version of § 83–11–103, the Greenville fire truck involved in this case appears to most certainly be "uninsured" for the purposes of Mississippi's Uninsured Motorist Statute. At the very least, there are genuine issues of material fact which preclude the award of summary judgment on the issue. The defendant is not entitled to the entry of a judgment as a matter of law as to the plaintiff's claims, and its motion for summary judgment shall be denied. Further, although the counter-defendant has filed an untimely motion for summary judgment, the undersigned feels that it is in the best interests of this litigation that it be considered. The motion to consider the counter-defendant's motion for summary judgment out of time shall be granted. The court finds that motion only partially well taken, and shall dismiss the defendant's counter-claims against the third-party defendant only insofar as those claims are based upon a statutory right to subrogation under Mississippi law.

A separate order in accordance with this opinion shall issue this day.

---

equity, a party such as American may not sit on his rights and expect an additional opportunity for relief by virtue of equity. Nonetheless, the plaintiff's claim for relief is premised upon novel and complex theories of law. While equity will

not always reward a party for his failure to preserve his rights under law, the undersigned does not believe that American should be totally deprived of recoupment for pursuing a legal determination of Coleman's claims in this case.